## CLARKE v. BAKER.

1. Assignment for Creditors—Preferences.—A deed of assignment which provides for a preferred payment "for services rendered us by our said assignees, said services being of a professional and legal nature," but not apparently the reasonable charges of attorneys employed to draw the deed, is void under the statute by reason of this preference.
2. Ibid.—Exclusion of Creditors.—Where a deed of assignment provides for a distribution of the assigned estate only among such creditors as "shall accept under this assignment," it in effect excludes non-accepting creditors, and is therefore void.

Before Kershaw, J., Lancaster, March, 1891.

The opinion states the case.

*Messrs. Jones & Williams,* for appellant.

*Messrs B. B. Clarke, J. T. Hay,* and *M. J. Hough,* contra.

July 20, 1892. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN. This was an action of "claim and delivery of personal property," a small stock of general merchandise worth $500 or $600, which will be better understood from a short outline of the facts.

It seems that B. F. Baker and Susan Baker are husband and wife, and kept a little store together at the small town of Kershaw, in Lancaster County, under the style of "B F. Baker, agent." They became embarrassed, and consulted their friend, Dr. J. E. W. Haile, requesting him to become the assignee of their property for the benefit of their creditors. Haile advised delay and assisted them in an effort to compromise with their creditors. This effort did not succeed, and under the instruction of the Bakers, Haile prepared a deed of assignment and kept it ready to be used if occasion required. Matters were in this condition up to April 2, 1890, when Mr. Stephenson called and informed the Bakers that they had been sued, and that unless they made an assignment, they would be closed out by the sheriff. The account of the Bakers is that on the next morning (April 3), Mr. Stephenson called again with a paper already drawn in his hand, making Mr. Clarke and himself assignees. There was a good deal of testimony as to what then occurred. The Bakers insist that they were prevailed upon to sign the Stephenson paper, when no one was present but himself, and that it was upon the express condition that they should have half an hour to consider it, and that at the expiration of that time they declined to make the assignment, and denied and still deny that they ever intended to make the paper an absolute and valid assignment. At all events, in a very short time, certainly within an hour, Mr. Haile came with the assignment he had prepared, and the Bakers executed it regularly in the presence of witnesses, delivered to him the keys, and he took possession of the stock of goods, sold them under the assignment to him, and now has the proceeds in his hands ($555), to be paid to the creditors.

The plaintiffs, named assignees under the Stephenson paper first signed, claiming that it was a perfected assignment, brought

this action of claim and delivery for the property or its value, against Baker and his wife and J. E. W. Haile, assignee under the last paper signed. They answered in accordance with the above statement. The cause came on for trial before his honor, Judge Witherspoon, at the October term (1890) of the court for the County of Lancaster, and there was a verdict for the defendants; but the judge ordered a new trial. The cause again came on for trial at the March term of the court for Lancaster, before Judge Kershaw and a jury, which resulted in a verdict for the plaintiffs "for the property described in the complaint, if the same can be delivered; if not, for $555." From this verdict and judgment the defendants appeal to this court upon numerous grounds of appeal (18 in number), which are all in the record. We will not attempt to consider the exceptions *seriatim*, but confine ourselves to the *fifth* and *eleventh* (5 and 11), which, in the view the court takes, will dispose of the case.

*Exception 11* complains that the judge erred "in charging that the plaintiffs' deed of assignment is good enough on its face."[1] It is clear that the plaintiffs had no interest in the little stock of goods in question, except through the paper hastily drawn by Mr. Stephenson, and at his instance signed by Baker and wife. If that paper does not give the right to maintain this action, it must certainly fail. Without going into the peculiar circumstances under which that alleged assignment was signed, it seems to us that its validity or invalidity may be tested by the terms of the paper itself, which contains the following paragraphs : "*In trust, nevertheless,* that the said B. B. Clarke and F. M. Stephenson, as said assignees, shall at once notify my said creditors of this assignment, and shall hold said property as assignees for us and in behalf of our said creditors, and that they, the said B. B. Clarke and F. M. Stepenson, shall proceed to sell said property as advantageously as possible, *and divide the proceeds pro rata among our said creditors ; provided, however, they shall accept under this assignment.* In consideration of services rendered us by our said assignees, B. B. Clarke and F. M. Stephenson, said services being of a professional and legal nature, we hereby agree to pay to them the sum of *one hundred dollars* ($100), said sum of

---

[1] And exception 5 made substantially the same point.—REPORTER.

money to be derived from the sale of said assigned stock of merchandise hereinbefore mentioned," &c.

It seems to us that the last clause of the paragraphs cited above gives a direct *preference* to those named as assignees for $100, in violation of section 2014 of the General Statutes, which requires assignments of insolvent debtors to give "no preference or priority" of any kind whatsoever, &c., on pain of making the assignment absolutely void. It is true that an assignment for the benefit of creditors may provide for all proper expenses, including a reasonable attorney's fee, incident to and necessary in the creation and execution of the trust, generally called costs and expenses of administration. But we can hardly suppose that this preferred claim was of that character. The property assigned was small and of little value ($500). The assignment itself was short and simple; Mr. Stephenson, who wrote it, seems not to be a lawyer, and the *"services"* are referred to as *"being of a professional and legal nature,"* and as having been already "rendered."

But besides this, we think the provision to *"divide the proceeds pro rata among our said creditors; provided, however, they shall accept under this assignment,"* was an unauthorized restriction upon the distribution of the assigned assets, which rendered the assignment void. What is the proper construction of this provision? Was it not that *all* creditors should take under the assignment, or not at all; that there was to be no payment *to any* until all accepted to take under the assignment; and that such acceptance was to be in full satisfaction of the whole debt? The effect of this would be to coerce the creditors, or return a surplus to the assignor. As was said by the Chief Justice in his separate opinion in the case of *Trumbo, Hinson & Co.* v. *Hamel & Co.*, 29 S. C., 531: "I can very well understand that an assignment which provides for only such of the creditors as will accept the terms—the execution of releases—and in the event of his refusal of such terms, not only deprives them of any participation in the assigned assets, but provides either expressly or by operation of law, that such assets shall revert to the assignor, may be regarded as an objectionable mode of coercing a creditor to accept any terms that his debtor

may choose to offer." See *Trumbo, Hinson & Co.* v. *Hamel*, 29 S. C., 530; *Claflin & Co.* v. *Iseman*, 23 S. C., 426; *Jacot* v. *Corbet*, Cheves Eq., 71; and *La Prince* v. *Guillemot*, 1 Rich. Eq., 219. "If one or more provisions in an assignment indicate an intent to delay, hinder, or defraud creditors, the whole instrument, and not merely the obnoxious part, is void as to those creditors who do not consent to it." 1 Am. & Eng. Encycl. Law, 869, and notes.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the complaint dismissed.